No. 15-1368

# In the
# United States Court of Appeals
## for the Seventh Circuit

MARIA STAPLETON, et al.,

*Plaintiffs-Appellees,*

v.

ADVOCATE HEALTH CARE NETWORK,
an Illinois Non-Profit Corporation, et al.,

*Defendants-Appellants.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division, No. 1:14-cv-01873.
The Honorable **Edmond E. Chang**, Chief Judge Presiding.

## REPLY BRIEF OF DEFENDANTS-APPELLANTS

AMY L. BLAISDELL
DANIEL J. SCHWARTZ
HEATHER M. MEHTA
GREENSFELDER, HEMKER & GALE, P.C.
Ten South Broadway, Suite 2000
St. Louis, Missouri 63102
(314) 516-2642

DAVID B. GOODMAN
GREENSFELDER, HEMKER & GALE, P.C.
200 West Madison Street
Suite 2700
Chicago, Illinois 60606
(312) 419-9090

*Attorneys for Defendants-Appellants*
*Benefit Plan Administrative Committee for the Church Plans of*
*Advocate Health Care Network, and Compensation and Benefits Committee of the*
*Board of Directors of Advocate Health Care Network, each an individual*

COUNSEL PRESS · (866) 703-9373 PRINTED ON RECYCLED PAPER

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

SUMMARY OF ARGUMENT ........ 1

ARGUMENT ........ 3

I. The 'Church Plan' Definition Includes Plans Established by Organizations Controlled By or Associated With a Church. ........ 3

A. The definition of 'church plan' in ERISA § 3 is enlarged by Subsection (33)(C). ........ 5

1. The word 'includes' expands the 'church plan' definition. ........ 5

2. Church-associated organizations can establish church plans. ........ 9

3. Other principles and policy arguments offered by Plaintiffs and their amici are unpersuasive. ........ 10

4. The District Court's interpretation raises constitutional issues. ........ 11

B. The 'church plan' definition includes plans maintained by a committee of a church-associated organization. ........ 13

1. ERISA § 3(33)(C)(i) describes an administrative committee ........ 15

2. Advocate is associated with the churches under ERISA § 3(33)(C)(iv). ........ 17

II. The Legislative History Supports a Broad Interpretation. ........ 20

III. The Longstanding Agency Interpretation is Entitled to Deference. ........ 23

IV. The 'Church Plan' Exemption is Constitutional as Applied to Advocate ........ 27

A. Applying the ERISA exemption to Advocate does not unconstitutionally favor religious adherents. ........ 27

B. Under *Lemon*, the 'church plan' exemption does not violate the Establishment Clause. ....31

1. Congress' purposes in enacting the exemption and the 1980 amendment were secular. ....31

2. The 'church plan' exemption, as amended, does not endorse or advance religion. ....33

3. The exemption does not foster government entanglement with religion. ....36

CONCLUSION ....38

## TABLE OF AUTHORITIES

**Cases**

*Alaska Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461 (2004)....................25

*Arobelidze v. Hodler*, 653 F.3d 513 (7th Cir. 2011)........................................ 24, 25

*Bethel Conservative Mennonite Church v. Comm'r of Internal Revenue,* 746 F.2d 388 (7th Cir. 1984) ..........................................................................................15

*Brown v. Gardner*, 513 U.S. 115 (1994) ..................................................................26

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) ........15

*Burgess v. United States*, 553 U.S. 124 (2008)..........................................................5

*Catholic Charities of Maine, Inc. v. City of Portland*, 304 F. Supp. 2d 77 (D. Me. 2004)............................................................................................................. 9, 18

*Chevron U.S.A. Inc. v. Natural Resource Defense Council, Inv.*, 467 U.S. 837 (1984)................................................................................................................23

*Chronister v. Baptist Health*, 442 F.3d 648 (8th Cir. 2006)..................................19

*Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833 (1986) ..................25

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos,* 483 U.S. 327 (1987) .................................................................... 31, 32, 34

*Cottage Savings Assn. v. Commissioner,* 499 U.S. 554 (1991)..............................26

*Cutter v. Wilkinson*, 544 U.S. 709 (2005) ..............................................................27

*Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840 (7th Cir. 2012)..................27

*Edwardsville Nat. Bank & Trust Co. v. Marion Labs., Inc.*, 808 F.2d 648 (7th Cir. 1987)..............................................................................................................14

*Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703 (1985) ........................................30

*Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005) ......................20

*Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230 (2009) ..........................................25

*Friend v. Ancilla Sys. Inc.*, 68 F. Supp. 2d 969 (N.D. Ill. 1999) .........................18

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997) ..........................................................................................................15

*Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561 (1995) ...............................................5

*Hall v. USAble Life*, 774 F. Supp. 2d 953 (E.D. Ark. 2011) ...............................18

*Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009)..........................................15

*Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136 (1987) .......................35

*Humphrey v. Sisters of St. Francis Health Servs., Inc.*, 979 F. Supp. 781 (N.D. Ind. 1997)...................................................................................................14

*Jimmy Swaggart Ministries v. Bd. of Equalization*, 493 U.S. 378 (1990) ............31

*Lemon v. Kurtzman*, 403 U.S. 602 (1971) .................................................. passim

*Lorillard v. Pons,* 434 U.S. 575 (1978) ..................................................................25

*Lown v. Cont'l Cas. Co.*, 238 F.3d 543 (4th Cir. 2001) ............................ 4, 14, 19

*McCarthy v. Fuller*, 714 F.3d 971 (7th Cir. 2013) ..............................................18

*Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173 (7th Cir. 1987) ...............10

*Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449 (7th Cir. 1998) ..........................................................................................................15

*Milner v. Dep't of Navy*, 562 U.S. 562, 131 S.Ct. 1259 (2011) ............................20

*Nichols v. United States*, 511 U.S. 738 (1994) .....................................................33

*Overall v. Ascension,* 23 F. Supp. 3d 816 (E.D. Mich. 2014) .................. 2, 14, 19

*Priests For Life v. U.S. Dep't of Health & Human Servs.*, 772 F.3d 229 (D.C. Cir. 2014) .......... 12

*Rapanos v. United States*, 547 U.S. 715 (2006) .......... 26

*Russello v. United States,* 464 U.S. 16 (1983) .......... 22

*Samantar v. Yousuf*, 560 U.S. 305 (2010) .......... 6

*Sandifer v. U.S. Steel Corp.*, 678 F.3d 590 (7th Cir. 2012) *aff'd*, 134 S. Ct. 870 (2014) .......... 10

*Sebelius v. Auburn Regional Medical Center*, 133 S.Ct. 817 (2013) .......... 25

*Skidmore v. Swift & Co.*, 323 U.S. 134 (1944) .......... 23, 24

*Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Engineers*, 531 U.S. 159 (2001) .......... 26

*Texas Monthly, Inc. v. Bullock*, 489 U.S. 1 (1989) .......... 29, 30, 33

*Thorkelson v. Publ'g House of Evangelical Lutheran Church in Am.*, 764 F. Supp. 2d 1119 (D. Minn. 2011) .......... 14

*United States v. Cleveland Indians Baseball Co.,* 532 U.S. 200 (2001) .......... 26

*United States v. Jeffries*, 854 F.2d 254 (7th Cir. 1988) .......... 13

*United States v. Lee*, 455 U.S. 252 (1982) .......... 35

*United States v. Nat'l Treasury Employees Union*, 513 U.S. 454 (1995) .......... 28

*Univ. of Notre Dame v. Sebelius*, 743 F.3d 547 (7th Cir. 2014) *cert. granted, judgment vacated sub nom. Univ. of Notre Dame v. Burwell*, 135 S. Ct. 1528 (2015) .......... 12

*Van Orden v. Perry*, 545 U.S. 677 (2005) .......... 27

*Wallace v. Jaffree*, 472 U.S. 38 (1985) .......... 32

*Walz v. Tax Comm'n of City of New York*, 397 U.S. 664 (1970) ................ passim

*Ward v. Unum Life Ins. Co. of Am.*, No. 09-C-431, 2010 WL 4337821 (E.D. Wis. Oct. 25, 2010) ........................................ 19

*Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371 (2003) ........................................ 25

*Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008) ........................................ 28

*Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505 (7th Cir. 2007) .................... 10

**Statutes**

26 U.S.C. § 414 ........................................ 3

ERISA § 3(32), 29 U.S.C. § 1002(32) ........................................ 8

ERISA § 3(33)(C), 29 U.S.C. § 1002(33) ........................................ passim

ERISA § 3, 29 U.S.C. § 1002 ........................................ 10

ERISA § 4(b), 29 U.S.C. § 1003(b) ........................................ passim

**Regulations**

Prop. Treas. Reg. § 1.414(e)-1(e), 42 Fed. Reg. at 18,623 ................................ 13

**Other Authorities**

125 Cong. Rec. 10,052-58 (May 7, 1979) ........................................ 16, 20, 21

I.R.S. Gen. Couns. Mem. 39,007, 1983 WL 197946 (Nov. 2, 1982) .......... 18, 24

I.R.S. Not. 2014-19 ........................................ 37

MERRIAM WEBSTER'S COLLEGIATE DICTIONARY (10th ed. 1996) ........................ 6

## SUMMARY OF ARGUMENT

The error in Plaintiffs-Appellants' ("Plaintiffs'") argument and in the District Court's holding arises from their failure to adhere to the first rule of statutory construction—follow the plain language of the statute. In 1974, Congress enacted the Employee Retirement Income Security Act ("ERISA") and provided an exemption for "a plan established and maintained . . . by a church . . . ." 29 U.S.C. § 1002(33)(A) (ADD1).[1] In 1980, Congress expanded the plans covered by the "church plan" definition, stating that the term "includes a plan maintained by an organization . . . associated with a church." ERISA § 3(33)(C), 29 U.S.C. § 1002(33)(C).

Absent from the 1980 amendment are the words "established by a church." The District Court essentially added that phrase to the amendment. But adding a phrase to a statute is the job of Congress, not the Courts. This Court should begin by enforcing the law as written and

[1] Defendants-Appellants (collectively "Advocate") will use the same citation format used in their Appellant Brief. "ADD" refers to Advocate's Addendum, "APP" to the Appendix, and "Dkt." to the District Court docket.

conclude that "a church plan need not be established by a church." *Overall v. Ascension,* 23 F. Supp. 3d 816, 827 (E.D. Mich. 2014).

Once this Court determines that an organization associated with a church can establish a church plan, then the Court should consider Plaintiffs' two alternative theories of statutory construction and conclude that Advocate comes within the "church plan" definition. The plan documents, Yearbooks, and Covenantal Agreements establish that the Advocate Health Care Network Pension Plan ("Plan") is a church plan pursuant to Subsection (33)(C) because the Plan is maintained by a committee: "(1) whose principal function is to administer the plan," and (2) "the plan committee is controlled by or associated with a church." *Overall*, 23 F. Supp. 3d at 829.

Upon determining that the Plan is a church plan, the Court should then conclude that the statute is not unconstitutional as applied to Advocate. The law is clear that Congress can authorize exemptions from regulation for religious organizations. *Walz v. Tax Comm'n of City of New York*, 397 U.S. 664 (1970). This case fits squarely within *Walz.* The 1980

amendment extends the church plan definition (and, therefore, the ERISA exemption) beyond churches to church-associated organizations, including diverse social-service organizations. Furthermore, church plans are but one of five types of plans exempted from ERISA. *See* 29 U.S.C. § 1003(b)(1)-(5). Accordingly, Plaintiffs' Establishment Clause attack fails.

## ARGUMENT

### I. The 'Church Plan' Definition Includes Plans Established by Organizations Controlled By or Associated With a Church.

Plaintiffs attempt to dismiss 30 years of federal cases and agency opinions interpreting the "church plan" definition in ERISA § 3(33)[2] as "not persuasive" because they "ignored" the language in Subsection (33)(A). (Plaintiffs' Brief ("Br.") 15, 28, 32, 45, 46.) This argument overlooks that recent litigation introduced a novel interpretation relying almost exclusively on two words in Subsection (33)(A): "established by." The theory that a church plan must be established by a church was rarely raised in the last 30 years. Although the Internal Revenue Service ("IRS"), the

[2] References to ERISA § 3(33), 29 U.S.C. § 1002(33), include the parallel definition in the Internal Revenue Code § 414(e), 26 U.S.C. § 414(e). This brief will use the word "church" to refer to "a church or a convention or association of churches," as used in the definition.

Department of Labor ("DOL"), the United States Courts of Appeals for the Fourth[3] and Eighth Circuits, and numerous federal district courts did not address Plaintiffs' theory, it does not mean that they ignored or failed to analyze Subsection (33)(A). Indeed, almost all of the opinions quote the language of Subsection (33)(A) verbatim. It means only that for 30 years, dozens—perhaps hundreds—of judges, federal agents, and practitioners read the language without seeing the interpretation that Plaintiffs claim is plain and unambiguous. These facts suggest that the text may indeed be plain but does not state what Plaintiffs claim it says.

Plaintiffs' arguments largely rest on their assertion that the definition is "unambiguous." (Br. 35, 44, 51.) They even imply that the prevailing judicial interpretation is not "plausible." (Br. 35, n.32.) But Plaintiffs do not acknowledge that their interpretation fails if the statute is determined to be

---

[3] Plaintiffs claim that the Fourth Circuit's statement in *Lown v. Cont'l Cas. Co.*, 238 F.3d 543 (4th Cir. 2001), that "a plan established by a corporation associated with a church can still qualify as a church plan" is *dicta* and thus should not be followed. (Br. 27.) However, a district court within the Fourth Circuit in *Lann v. Trinity Health Corp.*, No. 8:14-cv-02237 (D. Md.), rejected the argument, stating "the Fourth Circuit has pretty much put that to rest at this point." (Plaintiffs' Addendum 54.)

ambiguous. The factors outside of the text of the "church plan" definition—the majority of cases, the longstanding agency construction, and the legislative history—weigh in favor of Advocate's interpretation.

### A. The definition of 'church plan' in ERISA § 3 is enlarged by Subsection (33)(C).

#### *1. The word 'includes' expands the 'church plan' definition.*

Although "means" in ERISA § 3(33)(A) may exclude any meaning that is not stated, *Burgess v. United States*, 553 U.S. 124, 130 (2008), the meaning of "church plan" is not stated solely in Subsection (33)(A). ERISA § 3(33) is the definition, not just Subsection (33)(A). *See* 29 U.S.C. § 1003(b)(2) (exempting a "church plan as defined in section 3(33)"). The word "includes" is used in Subsection (33)(C) of the definition to expand what is stated in Subsection (33)(A). *See Burgess*, 553 U.S. at 131 n.3. The repetition of the language of Subsection (33)(A) in Subsection (33)(C)(i) does not mean Subsection (33)(A) still applies. (Br. 19.) Instead the repeated words should have the same meaning they are given in Subsection (A)—the term "church plan." *Gustafson v. Alloyd Co., Inc.*, 513 U.S. 561, 570 (1995). Therefore, Subsection (33)(C)(i) *includes* plans maintained by

church-associated organizations within the term "church plan." In addition, ERISA § 3(33)(C)(ii) states the term "employee of a church" *includes* an employee of a tax-exempt, church-associated organization. Although Subsection (33)(A) read alone may be restrictive, the entire definition is expanded to cover church-associated organizations by the use of "includes" in Subsection (33)(C).

Indeed, the word "'includes' is usually a term of enlargement, and not of limitation." *Samantar v. Yousuf*, 560 U.S. 305, 317 n.10 (2010) (internal citations and quotations omitted). Yet, Plaintiffs argue and the District Court found that the word "includes" is used to "modify" who can maintain a church plan. (Br. 19; APP11.) The word "modify" means "to limit or restrict the meaning of . . ." or "to change." MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 588 (10th ed. 1996). Plaintiffs' interpretation is the opposite of the Supreme Court's reading of "includes"—as a term of expansion—and the natural definition: "to take in or comprise as a part of a whole." *Id.* at 748. As used in ERISA § 3(33)(C)(i), "includes" makes plans

maintained by church-associated organizations with the primary purpose of administering or funding a plan "part of" the term "church plan."

Plaintiffs' interpretation is undercut by their argument that "includes" elaborates or expands "the scope of the definition *only to the extent expressly provided*." (Br. 22 (emphasis original).) The words after "includes" in Subsection 3(33)(C)(i) do not "expressly provide" that the plan be established by a church. Plaintiffs can prevail only by persuading this Court to add words to Subsection (33)(C)(i).

A comparison to the use of "includes" in the "governmental plan" definition underscores Advocate's, not Plaintiffs' argument. (*Contra* Br. 23-24.) The two definitions use the same construction of defining what the term "means" and then stating that the term "includes" other plans. When analyzing the "governmental plan" definition, Plaintiffs conclude: "By including these *entities*, Congress elaborated upon the meaning of a 'plan established or maintained' by 'the government of any State' or 'by any agency or instrumentality' thereof." (Br. 23-24 (emphasis added).)

Plaintiffs' analysis has two flaws: (1) Congress did not include the *entities*,[4] it included their *plans* within the term "governmental plan" and (2) the express language states the *plans* being included are not "established or maintained" by the government. *See* 29 U.S.C. § 1002(32) (stating the term "governmental plan" "includes" "any plan *to which* the Railroad Retirement Act of 1935 or 1937 applies," "any plan *of* an international organization," or "a plan which is established *and* maintained by an Indian tribal government") (emphasis added). Congress was not elaborating on plans that already met the requirements that they be "established or maintained" by the government (*contra* Br. 25) but was adding plans that met the requirements contained after the word "includes." Similarly, in ERISA § 3(33)(C)(i), Congress added to the term "church plan" a plan that met the requirements contained after the word "includes"—that it be *maintained* by an organization described therein.

---

[4] If, as Plaintiffs argue, "includes" in ERISA § 3(32) clarifies that railroads and international organizations are an "agency or instrumentality" and an Indian tribe is a "State," then in ERISA § 3(33), the word "includes" would clarify that a church-associated organization is a "church" as used in Subsection (33)(A)(i).

2. *Church-associated organizations can establish church plans.*

Organizations described in ERISA § 3(33)(C)(ii)(II) can establish church plans. The plain language of the definition refutes Plaintiffs' assertion that Congress never intended an entity other than a church to establish a church plan. (Br. 15, 25, 55.) *See* 29 U.S.C. § 1002(33) (C)(i) and (ii)(II) (referring to organizations controlled by or associated with a church). Reading the definition to include plans established by the employers of "employees of a church"—including tax-exempt, church-associated organizations—does not create a slippery slope (*contra* Br. 33) but naturally flows from the rule that an employer can establish plans only for its employees.

In addition, ERISA § 3(33)(C)(iii) confirms that church-associated organizations can establish church plans. There is no support for Plaintiffs' contention that this subsection strips church-associated organizations of their status as employers. (Br. 27.) *Contra Catholic Charities of Maine, Inc. v. City of Portland*, 304 F. Supp. 2d 77, 84-85 (D. Me. 2004) (Subsection (33)(C)(iii) "brings a plan established or maintained by a non-church

organization within the general definition of 'church plan' if that organization is 'controlled by' or 'associated with' a church.") Plaintiffs' reading is inconsistent with the purpose of ERISA § 3(33)(C)(iii)—"to accommodate the differences in beliefs, structures, and practices among our religious denominations." 125 Cong. Rec. 10,052 (May 7, 1979) (ADD7).

#### 3. *Other principles and policy arguments offered by Plaintiffs and their amici are unpersuasive.*

The principle that exemptions should be construed narrowly is not applicable. This Court has held that this generalization is at best a tie-breaker and even less "if some offsetting 'canon of construction' is in play, as normally there will be." *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1177-78 (7th Cir. 1987); *see also, Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505, 508 (7th Cir. 2007). Furthermore, this Court has explained that the rule applies only to exemptions, *i.e.*, "coverage," and not to the scope of an act, *i.e.*, "definitions." *Sandifer v. U.S. Steel Corp.*, 678 F.3d 590, 595 (7th Cir. 2012) *aff'd*, 134 S. Ct. 870 (2014). The parties do not debate the meaning of the *exemption* in ERISA § 4(b), which plainly exempts "church plans." This case involves the *definition* of "church plan" in ERISA § 3.

Likewise, the attacks of Plaintiffs and their *amici* on the healthcare industry cannot be used to undermine the plain text of the definition. Without any empirical data to support their assertion, Plaintiffs suggest that a church is more likely or financially able to provide benefits than a church-associated organization. (Br. 35.) Yet, the data Plaintiffs do provide—Advocate's revenue and assets—undercut this assertion, as does the fact that the Plan is fully funded. (Br. 10; Dkt. #35-4, Financial Statement pg. 34.) Policy reasons offered by the National Employment Lawyers Association and AARP Foundation Litigation regarding why they believe the plans of church-associated organizations should not be church plans ignore that the definition was amended in 1980 to include plans of organizations controlled by or associated with a church. If Plaintiffs and the *amici* disagree with the amendment, their remedy lies in the halls of the United States Capitol.

*4. The District Court's interpretation raises constitutional issues.*

The District Court's construction raises serious constitutional concerns not because it distinguishes between churches and their church-

associated organizations but because it discriminates between churches. Advocate's "holy corners" illustration demonstrates that the District Court's interpretation leads to preference being given to churches that (1) establish and maintain their own plans, (2) participate in a plan established by a church and administered by a pension board, (3) include their social ministry organizations within the same corporation as the church, and (4) establish plans on behalf of their social ministry organizations. The District Court's interpretation distinguishes between *churches* based on *their* organizational form and polity. Therefore, the cases Plaintiffs cite are not on point. *See Priests For Life v. U.S. Dep't of Health & Human Servs.*, 772 F.3d 229 (D.C. Cir. 2014) (addressing the distinction between "religious employers" and "eligible organizations" in the Affordable Care Act regulations); *Univ. of Notre Dame v. Sebelius*, 743 F.3d 547 (7th Cir. 2014) *cert. granted, judgment vacated sub nom. Univ. of Notre Dame v. Burwell*, 135 S. Ct. 1528 (2015) (same). Advocate's interpretation is consistent with a key purpose of the amendment: accommodating differences in church structure. 125 Cong. Rec. 10,052 (ADD7).

Finally, the separation of church and state issue that concerned the churches when they lobbied for amendment of the "church plan" definition was the IRS's determination of when a religious organization deserved to be considered "an integral part of the church." *See* Prop. Treas. Reg. § 1.414(e)-1(e), 42 Fed. Reg. at 18,623 (ADD6); 125 Cong. Rec. 10,054-56 (ADD9-11). Governmental evaluation of the worth of a church's social welfare programs produces "a kind of continuing day-to-day relationship" that can run afoul of the Constitution. *Walz*, 397 U.S. at 674. This subjective evaluation is different from the IRS's inquiry into whether an entity is a "church." *See, e.g., United States v. Jeffries*, 854 F.2d 254, 258 (7th Cir. 1988).

### B. The 'church plan' definition includes plans maintained by a committee of a church-associated organization.

Plaintiffs' secondary arguments—that the Advocate Benefit Plan Administrative Committee for Church Plans ("Administrative Committee") does not meet the requirements of ERISA § 3(33)(C)(i) and that Advocate is not controlled by or associated with the churches pursuant to ERISA § 3(33)(C)(iv)—can be decided by this Court. First, the District Court's order—the denial of Advocate's Motion to Dismiss—is under

review, not the certified question. *Edwardsville Nat. Bank & Trust Co. v. Marion Labs., Inc.*, 808 F.2d 648, 650 (7th Cir. 1987). Second, both issues address the proper construction of the "church plan" definition—the very question before this Court. The meanings of "maintains" and "organization" in ERISA § 3(33)(C)(i) are both statutory construction issues, not factual issues. In addition, what it means to be "associated with a church" and whether the factors from *Lown*, 238 F.3d 543, should be applied in this Circuit are both issues involving the interpretation of ERISA § 3(33)(C)(iv).

Finally, Plaintiffs' allegations that Advocate maintains the Plan and that Advocate is not associated with the churches cannot stand in the face of documents that disprove the assertions. *See, e.g., Overall,* 23 F. Supp. 3d 816; *Thorkelson v. Publ'g House of Evangelical Lutheran Church in Am.*, 764 F. Supp. 2d 1119 (D. Minn. 2011); *Humphrey v. Sisters of St. Francis Health Servs., Inc.*, 979 F. Supp. 781 (N.D. Ind. 1997). The Plan documents attached to Advocate's Motion to Dismiss are referred to in the Complaint and central to the claims and, therefore, can be considered. *Hecker v. Deere &*

*Co.*, 556 F.3d 575, 582-83 (7th Cir. 2009). In addition, the Court can take judicial notice of historical documents, documents in the public record, reports of administrative bodies, and church documents. *Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998); *Bethel Conservative Mennonite Church v. Comm'r of Internal Revenue,* 746 F.2d 388, 392 (7th Cir. 1984) (church documents). These doctrines avoid unnecessary proceedings and prevent plaintiffs from "evading dismissal under Rule 12(b)(6)" when undisputed facts in the public record or documents prove their claim has no merit. *See Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012); *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1081 (7th Cir. 1997).

#### *1. ERISA § 3(33)(C)(i) describes an administrative committee.*

The Administrative Committee meets the requirements of ERISA § 3(33)(C)(i). Plaintiffs concede that ERISA § 3(33)(C)(i) does not apply only to pension boards. (Br. 37, n.35.) However, Plaintiffs and the Pension Rights Center ("PRC") insist that a committee cannot be "an organization whether a civil law corporation or otherwise" because it is only part of an

organization (here, Advocate). (Br. 59-60; PRC 15.) The definition does not require a committee to be separately incorporated, as evidenced by the language "or otherwise." Furthermore, a committee can have a purpose—such as the administration of benefit plans—that is distinct from the corporation's purpose.

Under ERISA § 3(33)(C)(i), the word "maintain" includes plan administration. Subsection (33)(C)(i) requires that "the principle purpose or function" of the organization maintaining the plan be "administration or funding" of the plan. Thus, the definition implies that an organization maintains a plan if it administers *or* funds it. However, Plaintiffs claim that maintaining a plan means having the ability to amend or terminate the plan (Br. 58-59), and PRC argues that maintaining requires funding. (PRC 15.) Both arguments conflict with the plain language of the statute and the legislative history. *See* 125 Cong. Rec. 10,052 (referring to plans "*administered* by a pension board") (emphasis added) (ADD7).

If the Court agrees that an administrative committee can meet the requirements of ERISA § 3(33)(C)(i), it need not make any factual findings

to determine the Plan is maintained by an organization described in Subsection (33)(C)(i). The Plan document shows Plaintiffs' allegations are not plausible. The Plan states that it is administered by the Administrative Committee. (Dkt. #35-2, Plan §§ 2.31, 10.4.) Even under Plaintiffs' theory, the Plan is maintained by an ERISA § 3(33)(C)(i) organization because the Administrative Committee has authority to amend the Plan. (Dkt. #35-2, Plan §§ 10.4, 13.1(b).)

2. *Advocate is associated with the churches under ERISA § 3(33)(C)(iv).*

Advocate meets the statutory test of association with the United Church of Christ and Evangelical Lutheran Church in America. ERISA § 3(33)(C)(vi) defines "associated with a church" as sharing "common religious bonds and convictions with a church." 29 U.S.C. § 1002(33)(C)(iv). The Covenantal Agreements and the church Yearbooks demonstrate that this fact is not contestable. (Dkt. #35-8, ELCA Covenant; Dkt. #35-9, UCC Covenant; Dkt. #35-7, ELCA Yearbook pg. 609; Dkt. #35-6, UCC Yearbook pg. 875.) Determining that Advocate is associated with the churches based on these documents requires no determination of factual

issues[5] or impermissible inquiry into church doctrine. (*Contra* Br. 62-63.) The IRS and district courts accept an entity's listing in a church directory as evidence of association with a church, including on a motion to dismiss. *See Hall v. USAble Life*, 774 F. Supp. 2d 953, 958-60 (E.D. Ark. 2011); *Friend v. Ancilla Sys. Inc.*, 68 F. Supp. 2d 969, 971 (N.D. Ill. 1999); *Catholic Charities*, 304 F. Supp. 2d at 85; I.R.S. Gen. Couns. Mem. 39,007, 1983 WL 197946, at *4 (Nov. 2, 1982).

The First Amendment does not permit Plaintiffs to second-guess the churches' decisions to be associated with Advocate. *See McCarthy v. Fuller*, 714 F.3d 971, 976 (7th Cir. 2013). Plaintiffs claim that the First Amendment only protects a church's decision on an internal dispute and not on "purely secular disputes." (Br. 66-67.) Although this case may be a secular dispute, Plaintiffs' allegations regarding Advocate's association with the churches

[5] There is no factual issue regarding how the Covenantal Agreements are enforced because the Agreements address enforcement. (Dkt. #35-8, ELCA Covenant pg. 3; Dkt. #35-9, UCC Covenant pg. 4 (explaining the parties "ensure mutual accountability" by holding semi-annual meetings to review the Agreements and the "health of the relationship").

"are grounded in theology." *Overall,* 23 F. Supp. 3d 832. This internal church matter has been decided by the churches.

The church documents render the *Lown* factors irrelevant.[6] In *Lown*, 238 F.3d 543, and *Chronister v. Baptist Health*, 442 F.3d 648 (8th Cir. 2006), the churches had severed formal ties with the hospitals, creating a need for the courts to articulate a factual test of association. Here, Advocate maintains formal relationships with the churches, making this test inapplicable. *See supra* pg. 17-18.

Even under *Lown*, Advocate is associated with the churches because the United Church of Christ and the Evangelical Lutheran Church in America play a role in Advocate's governance, and they share financial ties. Advocate's board of directors cannot take any action without approval of at least one director from each church, and the board cannot amend provisions of its bylaws related to the churches' powers without the approval of the churches and their leaders. (Dkt. # 35-1, Bylaws §§ 3.13,

---

[6] *See Ward v. Unum Life Ins. Co. of Am.*, No. 09-C-431, 2010 WL 4337821, at *2 (E.D. Wis. Oct. 25, 2010) (refusing to adopt the *Lown* factors because "the statutory test does not ask about the employees and patients or customers but about the organization itself").

11.2.) Upon dissolution, Advocate's real and personal property will be given to the churches. (Dkt. # 35-1, Bylaws Art. X.)

## II. The Legislative History Supports a Broad Interpretation.

The Supreme Court has cautioned against reliance on legislative history. *See Milner v. Dep't of Navy*, 562 U.S. 562, 131 S.Ct. 1259, 1266 (2011) (The Court will not allow "ambiguous legislative history to muddy clear statutory language.") The legislative history here is not as narrow or "clear" as Plaintiffs claim. It should be considered only to the degree that it adds clarity to the text. *See Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 568 (2005).

Contrary to Plaintiffs' and PRC's assertions (Br. 35; PRC 6, 9), the legislative history reflects that the "church plan" definition was amended for *many* reasons,[7] all of which were part of the broad purpose of making

---

[7] The amendment's purposes include: to cover employees of church-associated organizations, ministers wherever they exercise their ministry, and former church and church-associated employees (125 Cong. Rec. 10,052 (ADD7)); to allow an entity controlled by or associated with a church that administers plans to operate church plans (125 Cong. Rec. 10,052 (ADD7)); to define when an entity is "associated with a church" (125

the definition more inclusive of all churches. 125 Cong. Rec. 10,052 (statement of co-sponsor Sen. Talmadge) (criticizing the original definition as too "narrowly drawn") (ADD7).

However, even Plaintiffs' version of the legislative history does not prove that their interpretation of the statute is correct. It simply illustrates that Subsection (33)(C)(i) can describe plans maintained by pension boards and that Subsection (33)(C)(ii)(II) permits church-associated organizations' employees to participate in plans described in Subsections (33)(A) or (C)(i). However, nowhere in the legislative history does it "clearly" state that a plan described in Subsection (C)(i) *must be established by a church*. Plaintiffs cannot use inferences drawn from legislative history to write the words "established by a church" into the amendment.

The language in an earlier draft of the amendment supports the conclusion that both churches and church-associated organizations can establish church plans. (*Contra* Br. 37-38.) The earlier draft of Subsection (33)(C)(i) stated that the "church plan" definition "shall include a plan

---

Cong. Rec. 10,052 (ADD7)); and to provide for a correction period if a plan fails to meet the "church plan" criteria (125 Cong. Rec. 10,053 (ADD8)).

*established* and maintained by an organization . . ." 124 Cong. Rec. 12,108 (emphasis added) (ADD24). Like Advocate, Plaintiffs rely on the principle that "[w]here Congress includes *limiting* language in an earlier version of a bill but deletes it prior to enactment, it may be presumed that the *limitation* was not intended." *Russello v. United States,* 464 U.S. 16, 23-24 (1983) (emphasis added). (Br. 38.) Plaintiffs, however, state that the language in the earlier draft "*expanded* the church plan exemption" and that "the Court may presume that an *expansion* of entities that could 'establish' church plans 'was not intended.'" (Br. 38 (emphasis added).) Therefore, Plaintiffs' argument is the opposite of the *Russello* principle. Furthermore, "established by" in the draft is limiting, not expansive. It adds a requirement not found in Subsection (33)(C)(i): that the plan be established by an organization described therein. This requirement would have created two types of church plans—those established and maintained by a church and those established and maintained by a Subsection (33)(C)(i) organization. It would have excluded plans established by a church and maintained by a Subsection (33)(C)(i) organization, which is the only type

of plans Plaintiffs claim the amendment was designed to include. If the purpose of the amended definition was to include only these plans, it would be odd for Congress initially to have drafted language that expressly excluded them. Instead, the absence of this language from the final bill shows Congress did not intend to limit who can establish a Subsection (33)(C)(i) church plan to *only* churches or *only* church-associated organizations.

## III. The Longstanding Agency Interpretation is Entitled to Deference.

The passage of more than 30 years in which Plaintiffs' interpretation was rarely noted undercuts their argument that the longstanding interpretation of the IRS and DOL conflicts with the plain text and thus should be ignored. At worst, Plaintiffs have identified a latent ambiguity that opens the door to considering the agencies' longstanding interpretation. *See Chevron U.S.A. Inc. v. Natural Resource Defense Council, Inv.*, 467 U.S. 837, 842-43 (1984).

The parties agree that *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944), supplies the appropriate framework for analyzing the deference owed to

the agencies' interpretation. (Br. 44-45.) Plaintiffs, however, omit that one of the factors that gives an interpretation the "power to persuade" is "its consistency with earlier and later pronouncements." *Skidmore*, 323 U.S. at 140. Here, there is no question that the reasoning articulated in General Counsel Memorandum 39,007 ("Memorandum") and the private letter rulings issued to Advocate has been consistently applied for more than 30 years.

Plaintiffs wrongly claim the IRS did not "review," "evaluate," or "analyze" the text, the relationship between Subsections (33)(A) and (C), or the legislative history. (Br. 45.) The Memorandum quotes the relevant subsections of the definition (including (33)(A)), cites to the legislative history, and contains a lengthy analysis. I.R.S. Gen. Couns. Mem. 39,007, 1983 WL 197946, at *2-3, 6 n.1. The text of the Memorandum refutes Plaintiffs' assertions. These facts also make the IRS's interpretation distinguishable from the agency decision that this Court found unpersuasive in *Arobelidze v. Hodler*, 653 F.3d 513 (7th Cir. 2011). The

Plaintiffs omit that the agency's decision in *Arobelidze* failed to consider the legislative history and was inconsistent with prior decisions. *Id.* at 521.

Longstanding consistent administrative interpretations, while "not products of formal rulemaking . . . nevertheless warrant respect." *Washington State Dep't of Soc. & Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 385 (2003); *Alaska Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 488 (2004).[8] Congressional approval of the interpretation is not inferred "only" when there is evidence that Congress was aware of the interpretation. (*Contra* Br. 47.) *See, e.g., Sebelius v. Auburn Regional Medical Center*, 133 S.Ct. 817 (2013), *citing Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 846 (1986); *Forest Grove Sch. Dist. v. T.A.*, 557 U.S. 230 (2009), *citing Lorillard v. Pons,* 434 U.S. 575, 580 (1978) (finding Congress is presumed to be aware of an interpretation "absent a clear expression elsewhere in the Amendments of Congress' intent to repeal" the

---

[8] *Alaska Dep't of Envtl. Conservation* did not set a standard that respect should "only" be given when the agency's opinion is "cogent" or "well-reasoned." (*Contra* Br. 46.) Therefore, Plaintiffs' suggestion that the IRS's interpretation is not "cogent" or "well-reasoned" is Plaintiffs' subjective opinion not legal analysis.

interpretation); *United States v. Cleveland Indians Baseball Co.*, 532 U.S. 200, 219-20 (2001), *citing Cottage Savings Assn. v. Commissioner,* 499 U.S. 554, 561 (1991) (finding a decades-old IRS interpretation was deemed to receive congressional approval).

Plaintiffs' cases illustrate that the Supreme Court required Congressional awareness when administrative interpretations added language or gloss to a statute that was beyond the plain text. *See Rapanos v. United States*, 547 U.S. 715 (2006) (adding "adjacent" waters to the Clean Water Act's definition of "navigable waters"); *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Engineers*, 531 U.S. 159 (2001) (finding agency impermissibly extended "navigable waters" to include migratory bird habitats); *Brown v. Gardner*, 513 U.S. 115, 116 (1994) (giving no deference to a Department of Veterans Affairs interpretation that read a fault requirement into the word "injury"). In contrast, here, the agencies' interpretation is consistent with the plain text of ERISA § 3(33)(C) without the need to add words. Therefore, Plaintiffs' cases are not helpful.

## IV. The 'Church Plan' Exemption is Constitutional as Applied to Advocate.

After Plaintiffs devoted the first 66 pages of their brief to the argument that Advocate is so far from being religious that it is *not* entitled to a "church plan" exemption, Plaintiffs argue in the last eight pages that Advocate is so religious that an ERISA exemption, "as applied" to Advocate, establishes religion. (Br. 67.)

Plaintiffs are wrong. When Congress expanded the "church plan" definition to include plans of church-associated organizations—including hospitals, schools, nursing homes, homeless shelters, and other charities—Congress moved ERISA's exemptions even farther from the wall of separation between church and state.

### A. Applying the ERISA exemption to Advocate does not unconstitutionally favor religious adherents.

The principal method of analyzing Establishment Clause claims is the three-part test of *Lemon v. Kurtzman*, 403 U.S. 602 (1971).[9] Plaintiffs suggest

---

[9] While it is true that some of the cases Plaintiffs cite did not use the *Lemon* test—*see, e.g., Cutter v. Wilkinson*, 544 U.S. 709 (2005); *Van Orden v. Perry*, 545 U.S. 677 (2005)—*Lemon* remains the prevailing test in this Circuit. *Doe ex rel. Doe v. Elmbrook Sch. Dist.*, 687 F.3d 840, 849 (7th Cir. 2012). Ironically,

that this Court should not use the *Lemon* test and instead adopt a test that any favoring of religious adherents over non-adherents is unconstitutional.[10] (Br. 68-69.) However, both Plaintiffs and Freedom From Religion Foundation ("FFRF")[11] argue that this rule "only" applies to an exemption provided "exclusively" to religious adherents. (Br. 68; FFRF 17.) ERISA's exemption provision, Section 4(b), acts more broadly than providing an exemption exclusively to churches—or even religious

---

Plaintiffs discourage the use of *Lemon* even though *Lemon* is viewed as a more "pro-plaintiff" Establishment Clause test. *Cutter*, 544 U.S. at 726 n.1 (Thomas, J., concurring) (noting that statute upheld by the court might have failed the *Lemon* test).

[10] Even Plaintiffs' inaccurate "favors adherents" test does not help their cause. Plaintiffs' Complaint alleges that Advocate is a non-adherent. (*See* Dkt. #1, Complaint ¶¶ 96, 97, 99.)

[11] FFRF erroneously claims this Court should first address whether the exemption is constitutional on its face, an argument that has never been raised by the Plaintiffs. (FFRF 5-6.) This Court has a duty to avoid unnecessary constitutional issues. *United States v. Nat'l Treasury Employees Union*, 513 U.S. 454, 478 (1995); *see also, Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 450-51 (2008) (explaining that facial challenges are disfavored because they "often rest on speculation," run contrary to "the fundamental principle of judicial restraint," and "threaten to short circuit the democratic process by preventing laws embodying the will of the people from being implemented in a manner consistent with the Constitution"). If this Court considers the facial challenge, the "church plan" exemption is constitutional on its face for the reasons explained in this section.

organizations—and, therefore, this case fits squarely within *Walz*, 397 U.S. 664.

In *Walz*, 397 U.S. 664, the Supreme Court upheld tax exemptions for real property used for religious purposes that was part of a larger exemption that included other charitable activities. *Id.* at 666-67 n.1. The Court held that relief from regulation was "neither the advancement nor the inhibition of religion; it is neither the sponsorship nor hostility." *Id.* at 672. "[S]paring the exercise of religion" from a burden is not "attempting to establish religion." *Id.* at 673. Congress is empowered to exempt certain potential taxpayers from taxes. *Id.* at 679-80.

As articulated in *Walz,* it is not unconstitutional to exempt churches and church-associated organizations, such as Advocate, from government regulation as part of a statute providing broader exemptions, such as ERISA § 4(b) that exempts five types of plans.

This case is not like *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1 (1989). (Br. 68, 69 n.56, 72.) There, the plurality found an Establishment Clause violation in a state statute that exempted from sales tax *only* publications

published or distributed by a “religious faith” and *only* those that consisted “wholly” of writing “promulgating the teaching of the faith” and writings “sacred to a religious faith.” *Id.* at 5. The plurality recognized that a broader exemption more like that in *Walz* would not violate the Establishment Clause. *Id.* at 15-16.

Here, ERISA’s exemption provision is not exclusively for churches and includes a broader range of entities than the Texas exemption. *See* 29 U.S.C. § 1003(b) (exempting governmental plans; church plans; plans designed to comply with workers compensation, unemployment compensation, or disability insurance laws; plans for nonresident aliens; and excess benefit plans).

Plaintiffs also cite *Estate of Thornton v. Caldor, Inc.*, 472 U.S. 703 (1985), but that case found that a law itself, by protecting Sabbath observers, advanced “a particular religious practice.” *Id.* at 710. The “church plan” exemption does not advance a “particular” religious practice and instead broadly encompasses all churches and their associated organizations.

### B. Under *Lemon*, the 'church plan' exemption does not violate the Establishment Clause.

The *Lemon* factors examine whether the statute (1) has a secular legislative purpose, (2) has the principal or primary effect of advancing or inhibiting religion (also known as the "endorsement" test), and (3) fosters "an excessive entanglement with religion." *Lemon*, 403 U.S. at 612-13. Under *Lemon*, the "church plan" exemption does not establish religion.

#### *1. Congress' purposes in enacting the exemption and the 1980 amendment were secular.*

Plaintiffs ignore that avoiding government entanglement with religion is a secular purpose. *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos,* 483 U.S. 327, 335 (1987).[12] Here, Congress' stated purpose when enacting the original "church plan" exemption was to

---

[12] Plaintiffs misstate the first factor as requiring the exemption to relieve a burden on free exercise and cite *Jimmy Swaggart Ministries v. Bd. of Equalization*, 493 U.S. 378, 391-94 (1990). (Br. 69.) The case held that a government did not violate the Free Exercise or Establishment Clauses by *not* providing an exemption from taxes to a religious organization and, therefore, is irrelevant. FFRF also cites to *Swaggart* and other cases with the same holding to argue that the "church plan" exemption violates the Establishment clause by failing to prevent government entanglement. (FFRF 21-26.) This is a misstatement of the third factor, and these cases are equally inapplicable to that prong.

avoid government entanglement with religion. *See* 124 Cong. Rec. 12,106 (May 2, 1978) (ADD22). The 1980 amendment, by accommodating differences in church structure, furthered this purpose and relieved the burden on a church of "predict[ing] which of its activities a secular court will consider religious." *Amos*, 483 U.S. at 336.

The first *Lemon* factor examines Congressional intent at the time of enactment and not whether every entity that later benefits from a statute would suffer the harm Congress anticipated. Therefore, Plaintiffs' argument regarding Advocate's financial disclosures is misplaced. (Br. 70-71.) Furthermore, *Wallace v. Jaffree*, 472 U.S. 38 (1985), does not stand for the proposition that when the application of an accommodation does not serve the statute's secular purpose, the statute has "no purpose." (Br. 71.) *Wallace* makes a different point—when a statute with a secular purpose is amended to include reference to prayer and "Almighty God," the purpose of the amendment must have been non-secular. *Wallace*, 472 U.S. at 59. Here, the original church plan exemption was enacted with a secular purpose (avoiding entanglement), and the amendment did not alter that purpose.

2. *The 'church plan' exemption, as amended, does not endorse or advance religion.*

Plaintiffs have not shown that the "church plan" exemption endorses or advances religion. Plaintiffs primarily address the second *Lemon* factor while analyzing the first factor and erroneously claim that any harm to third parties demonstrates an impermissible effect.

First, Plaintiffs claim that a religious exemption that does not relieve a burden endorses religion. *Texas Monthly,* 489 U.S. at 15. But as narrow as the *Texas Monthly* plurality opinion was, the precedential value lies in the narrowest opinion forming a majority. *Nichols v. United States*, 511 U.S. 738, 745 (1994). The concurring opinion emphasized that the Texas exemption violated the Establishment Clause because it was "*limited* to the sale of religious literature by religious organizations." *Texas Monthly*, 489 U.S. at 28 (Blackmun, O'Connor, JJ., concurring) (emphasis original). Justice Blackmun's concurrence further emphasized the importance of the legislative role in balancing the concerns of the Free Exercise and Establishment Clauses. *Id.* at 28.

Plaintiffs also mistakenly rely on Justice O'Connor's concurring

opinion in *Amos*, 483 U.S. at 347. (Br. 71-72.) The point of her opinion was that non-profit status of the defendant in *Amos* helped demonstrate that its activities were "not purely secular" and an exemption for a non-profit was unlikely to be viewed as an endorsement of religion. *Id.* at 346-49. Thus, the concurring opinion supports Advocate's position as a non-profit, which does not operate in a "purely secular" fashion.

The rest of what appears to be Plaintiffs' analysis of the second *Lemon* factor is not a *Lemon* factor at all: that non-adherents are harmed as compared to adherents, specifically employees (who do not receive ERISA protections) and competing hospitals (who have to spend more money to comply with ERISA).[13] (Br. 72-73.) The case law does not make this a factor. Plaintiffs and their *amicus*, ACLU and Americans United for Separation of Church and State ("ACLU"), also ignore that these same harms are applicable to all employees whose plans are exempt from ERISA, including

[13] Plaintiffs cannot speak for competing hospitals, and none of the four *amicus curiae* briefs filed in support of Plaintiffs come from competing hospitals. This Court should disregard these arguments.

approximately 22 million government employees.[14] This is not a burden being imposed on non-adherents but a Congressional choice to avoid the regulation of certain plans.

The cases Plaintiffs and ACLU cite for their "harm to others" argument are not relevant and are primarily Free Exercise cases. (*See, e.g.*, Br. 72 and ACLU 5-6, *citing United States v. Lee*, 455 U.S. 252, at 260 n.11 (1982) (refuting an Amish employer's claim that paying social security taxes for his employees violated his religion).) Plaintiffs cite *Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136 (1987), for the proposition that only "necessary" accommodations are permitted. (Br. 73.) But that case held that the Free Exercise Clause required a state to pay unemployment benefits to a person fired for refusing to work on the Sabbath and that compliance with the Free Exercise Clause did not violate the Establishment Clause. *Id.* at 144-46.

---

[14] Patton, Mike, "The Growth of the Government: 1980 to 20112," Forbes, *available at* http://www.forbes.com/sites/mikepatton/2013/01/24/the-growth-of-the-federal-government-1980-to-2012/ (last visited May 16, 2015).

*3. The exemption does not foster government entanglement with religion.*

The church plan exemption, particularly as amended, does not foster excessive government entanglement with religion and instead has the opposite effect. *See Walz*, 397 U.S. at 676 ("[E]xemption creates only a minimal and remote involvement between church and state and far less than [regulation] of churches.") Providing the "church plan" exemption does not create impermissible ongoing "control and surveillance." *Lemon*, 403 U.S. at 621. Pursuant to the plain language of the amended statute, the religious inquiry is whether the organization is associated with *or* controlled by a church. The IRS has applied this rule neutrally for more than 30 years without creating First Amendment issues.

Plaintiffs argue that the exemption creates more entanglement than not having an exemption. (Br. 73-74.) But the entanglement Plaintiffs identify is based on their own attempt to probe into the importance of and the adherence to church doctrine (*see* Dkt. #1, Complaint ¶¶ 95-99) and not the government's neutral application of the law.

FFRF incorrectly articulates the test as requiring the exemption to be necessary to prevent government entanglement. (FFRF 20.) Instead, the exemption "must not *foster* an excessive government entanglement with religion." *Lemon*, 403 U.S. at 612-13 (emphasis added). Therefore, whether ERISA creates government entanglement that the exemption is designed to relieve is irrelevant.

Nevertheless, ERISA does pose a risk of First Amendment violations. It is telling that Plaintiffs argue that socially responsible investment practices are allowed by ERISA "as long as alternative investments perform on par with screened investments." (Br. 70.) The "as long as" qualifier implies that ERISA *would* bar a church plan from avoiding investing in companies with better returns but with objectionable or immoral practices. In addition, there could be Free Exercise challenges to ERISA's requirement to provide survivor annuities to same-sex couples who were married in a state that recognizes the marriage. *See* I.R.S. Not. 2014-19. Congress acted well within its power under the Establishment Clause to avoid putting churches and associated organizations in such binds.

Plaintiffs have failed to plead allegations that plausibly show that the "church plan" exemption fails the controlling *Lemon* test.

## CONCLUSION

For the reasons stated herein and in the Appellant Brief, the judgment of the District Court should be reversed.

Respectfully submitted,

GREENSFELDER, HEMKER & GALE, P.C.

By s/ Amy L. Blaisdell

Amy L. Blaisdell
apb@greensfelder.com
Daniel J. Schwartz
djs@greensfelder.com
Heather M. Mehta
hmm@greensfelder.com
10 South Broadway, Suite 2000
St. Louis, Missouri 63102
Telephone: 314-241-9090
Facsimile: 314-345-4792

David B. Goodman
dbg@greensfelder.com
200 West Madison Street, Suite 2700
Chicago, IL 60606
Telephone: 312-345-5008
Facsimile: 312-241-8624

*Attorneys for Defendants-Appellants*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that the foregoing Reply Brief of Defendants-Appellants complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 7,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

The undersigned further certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word Version 2010 in 14 point Palatino Linotype font.

Dated: May 20, 2015

s/ Amy L. Blaisdell

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 20, 2015 the Reply Brief of Defendants-Appellants was filed with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.

The following participant in the case is a registered CM/ECF user and will be served by the appellate CM/ECF system:

Ryan F. Stephan
James B. Zouras
STEPHAN ZOURAS, LLP
205 N. Michigan Avenue, Suite 2560
Chicago, IL 60601

Mary J. Bortscheller
Karen L. Handorf
Michelle C. Yau
COHEN MILSTEIN SELLERS & TOLL PLLC
1100 New York Avenue N.W., Suite 500
West Tower
Washington, DC 20005-3964

Mark E. Chopko
STRADLEY RONON STEVENS & YOUNG LLP
1250 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20036

Mark D. DeBofsky
DEBOFSKY & ASSOCIATES, P.C.
200 W. Madison Street
Suite 2670
Chicago, IL 60606

Patrick Elliott
FREEDOM FROM RELIGION FOUNDATION
Ten N. Henry Street
Madison, WI 53703

Karen Ferguson
PENSION RIGHTS CENTER
1350 Connecticut Avenue N.W.
Suite 206
Washington, DC 20036

Matthew M. Gerend
Erin M. Riley
Lynn Lincoln Sarko
KELLER, ROHRBACK
1201 Third Avenue, Suite 3200
Seattle, WA 98101

Laurence Arthur Hansen
LOCKE LORD EDWARDS LLP
111 S. Wacker Drive
Chicago, IL 60606

Ron Kilgard
KELLER ROHRBACK, P.L.C.
Suite 1400
3101 N. Central Avenue
Suite 1400
Phoenix, AZ 85012

Gregory M. Lipper
AMERICANS UNITED FOR SEPARATION
OF CHURCH AND STATE
Ste 850, East Tower
1301 K Street N.W.
Washington, DC 20005

Mary E. Signorille
AARP FOUNDATION LITIGATION
601 E Street N.W.
Washington, DC 20049

s/ Amy L. Blaisdell